IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Brady Kemp, III, ) | |
| ) | Civil Action No.: 1:14-cv-04840-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| United Parcel Service, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court pursuant to the Motion for Summary Judgment (ECF No. 49) filed by Defendant United Parcel Service, Inc. ("Defendant"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02, D.S.C., the matter was referred to United States Magistrate Judge Kaymani D. West for a Report and Recommendation ("Report"). On April 18, 2016, the Magistrate Judge issued a Report recommending that the court grant Defendant's Motion for Summary Judgment. (ECF No. 59.) Plaintiff Brady Kemp, III, ("Plaintiff") filed Objections to the Report, which are presently before this court. (ECF No. 60.) For the following reasons, this court **ACCEPTS** the Magistrate Judge's Report (ECF No. 59) and **GRANTS** Defendant's Motion for Summary Judgment with prejudice. (ECF No. 49)

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts as viewed in the light most favorable to Plaintiff are discussed in the Report and Recommendation. (*See* ECF No. 59.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein facts pertinent to the analysis of Plaintiff's claims. (ECF No. 60.)

Plaintiff is a sixty-three year old, African-American male. (ECF No. 54 at 2.) Defendant

1

is in the business of delivering packages around the world. (ECF No. 49-3 at 3 ¶ 3.) "Packages are delivered to and picked up from . . . [Defendant's] customers in the familiar brown delivery trucks, which are referred to as 'package cars,' and the employees operating these package cars are referred to as 'Package Car Drivers.'" (*Id.* at ¶ 4.) Defendant employed Plaintiff as a package car driver responsible for making pick-ups and deliveries in the Barnwell area of Aiken, South Carolina. (*Id.* at ¶ 5; *see also* ECF No. 49-4 at 3 ¶ 5.) "The terms and conditions of [a] Package Car Drivers' employment [we]re governed by the Collective Bargaining Agreement ("CBA") between UPS and the . . . [International Brotherhood of Teamsters]." (ECF No. 49-3 at 5 ¶ 11.)

In 1975, Plaintiff began working for Defendant as a package car driver in Augusta, Georgia. (ECF No. 54-9 at 7:16–20.) In 1977, Plaintiff laterally transferred to Defendant's location in Aiken, South Carolina. (*Id.* at 7:21–24.) For the last two to four years of his employment with UPS, Plaintiff ran a delivery route in the Barnwell, South Carolina region. (*Id.* at 20:16–24.) During a significant portion of his career, approximately ten and fifteen years, Plaintiff was a union steward. His duties included protecting the rights of the union members on hourly wages at UPS. (*Id.* at 10:16–13:2.) He was the union steward at the time of his termination.

Defendant issued Plaintiff his first warning letter on November 18, 2010 because he failed to follow protocol, and he missed a package. (ECF No. 59 at 8.) Similarly, on January 24, 2011, Plaintiff was issued a suspension letter for another failure to adhere to protocol incident that occurred during a snowstorm. (*Id*.). Plaintiff was issued a discharge letter for failure to properly code a delivery on September 1, 2011. (ECF No. 59 at 9.) Plaintiff contends that he did not receive notice of the aforementioned September 2011 infraction from Defendant via certified mail. On April 11, 2012, Plaintiff failed to make a scheduled pickup. (ECF No. 59 at 10.) On

2

April 12, 2012, Ray Boulware ("Boulware"), the Aiken Center Business Manager, disclosed to Plaintiff that he would be issued a warning letter for the infraction. (ECF No. 59 at 11.) Boulware claims that he was unaware of Plaintiff's prior disciplinary transgressions. (ECF No. 59 at 11.) In fact, John Smaltz ("Smaltz"), Plaintiff's On-Road Supervisor, had erroneously drafted the warning letter that was sent to Boulware because Smaltz claims to have forgotten Plaintiff's prior infractions. (*Id.*) Later, Defendant's Labor Department notified Boulware and Smaltz that Plaintiff was due a discharge letter based on the multiple previous infractions. (*Id.*)

On April 16, 2012, Smaltz allegedly informed Plaintiff and Union Steward Bill Sizemore ("Sizemore") that the warning letter had been issued in error and that it would be replaced with a discharge letter. (ECF No. 59 at 11.) However, Sizemore testified that Smaltz advised Plaintiff that the warning letter would be replaced with a suspension letter. (ECF No. 59 at 11-12.) Further, Sizemore alleges that Smaltz explained to Plaintiff there had been a mistake, and he would continue his employment under a "working suspension." (ECF No. 59 at 12.) Accordingly, Plaintiff accepted the suspension and chose not to file a grievance. (ECF No. 59 at 12.)

On April 18, 2012, Defendant mailed Plaintiff, and the Union, a letter communicating that Plaintiff's employment was being terminated for the April 11, 2012 incident. (ECF No. 59 at 12.) Neither Plaintiff nor the Union filed a grievance within the ten (10) day period required by the Collective Bargaining Agreement ("CBA"). (ECF No. 59 at 13.) Consequently, Defendant finalized the termination on May 2, 2012. (ECF No. 59 at 13.) Plaintiff testified that he was first informed of his termination at a meeting on May 7, 2012. (ECF No. 59 at 13.)

On May 14, 2012, Plaintiff attempted to appeal his termination by filing a grievance and he approached Smaltz to get his signature on the grievance form. (ECF No. 59 at 13-14.) Smaltz

3

instructed Plaintiff to seek Boulware's signature, but Boulware was not in that day. (ECF No. 59 at 14.) Plaintiff submitted his grievance twenty-six (26) days after Defendant issued its discharge letter. (ECF No. 59 at 14.) Ultimately, after a local-level panel hearing determined that Plaintiff's appeal was untimely, a review panel in Baltimore, Maryland upheld the decision by Defendant to terminate Plaintiff. (ECF No. 59 at 15.)

## II. JURISDICTION

This court has jurisdiction over Plaintiff's Title VII claims via 28 U.S.C. § 1331, as they arise under a law of the United States, and also via 42 U.S.C. § 2000e-5(f)(3), which empowers district courts to hear claims brought under Title VII.

## III. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. *Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). The responsibility to make a final determination remains with this court. *See id.* This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may "accept, reject, or modify, in whole or in part," the Magistrate Judge's recommendation, or recommit the matter with instructions." *See* 28 U.S.C. § 636 (b)(1). Objections to a Report and Recommendation must specifically identify portions of the Report to which the party objects, and the basis for those objections. Fed. R. Civ. P. 72(b). In this case, Plaintiff timely filed objections to the Report. (ECF No. 60).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact[,] and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision,* 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## IV. ANALYSIS

Plaintiff objects to the Magistrate Judge's Report (ECF No. 59) in two areas.[1] First, Plaintiff claims that he has proven pretext with regard to the Title VII race discrimination claim. (ECF No. 60 at 4.) Second, Plaintiff claims that he has shown sufficient causation related to the retaliation claim. (ECF No. 60 at 7.)

---

[1] The court observes that Plaintiff does not object to the Magistrate's finding that Plaintiff set out a prima facie case of race discrimination and a prima facie case of Title VII retaliation. (ECF No. 60 at 3.)

5

A.   Plaintiff's Title VII Race Discrimination Claim

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a claim of discrimination under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to this burden-shifting framework, the plaintiff first establishes a prima facie case of discrimination. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010).

Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class or evidence giving rise to an inference of unlawful discrimination. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Cason v. S.C. State Ports Auth.*, C/A No. 2:11-2241-RMG-BM, 2014 WL 588031, at *4 (D.S.C. Jan. 7, 2014) (citations omitted). "The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual." *Hammett v. S.C. Dep't of Health & Envtl. Control*, C/A No. 3:10-932-MBS-SVH, 2013 WL 1316440, at *5 (D.S.C. Jan. 25, 2013) (citing *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)).

   i.   *Defendant's proffered, non-discriminatory reason for Plaintiff's termination is sufficient.*

Upon her review, the Magistrate Judge correctly found that Defendant satisfied its burden

of production outlined in the *McDonnell Douglas* test by asserting the missed pick-up by Plaintiff, combined with prior infractions, as its reason for termination. (ECF No. 59 at 27.) Moreover, the Magistrate Judge was not persuaded that Defendant's reasons for terminating Plaintiff "were not the true reasons." (ECF No. 59 at 27 (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001)).)

> ii. *Plaintiff failed to prove that Defendant's proffered, non-discriminatory reason for terminating the Plaintiff was, in fact, pretext.*

In order to survive Defendant's Motion for Summary Judgment, Plaintiff has to come forward with sufficient evidence to demonstrate that the legitimate reason offered by Defendant was not its true reason, but was a pretext for discrimination. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Anderson v. Ziehm Imaging, Inc.*, C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000)). "The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct[;] [i]t is not enough to disbelieve the [employer]." *Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000)) (internal citations omitted). Rather, Plaintiff must demonstrate that a reasonable jury could "believe [his] explanation of intentional race discrimination." *Id.*

Plaintiff objects to the Magistrate Judge's finding that summary judgment is appropriate because he argues that the Magistrate Judge erroneously failed to find pretext. Plaintiff asserts that the Magistrate Judge "incorrectly disregarded the significance of Plaintiff's arguments surrounding the Defendant's disregard of its own policies and procedures concerning its racially

7

discriminatory and pretextual termination of Plaintiff." (ECF No. 60 at 4.)   In support of this argument, Plaintiff asserts:

> Had the Defendant followed its own policies and procedures regarding Plaintiff's termination, he would not have been terminated as Plaintiff had the right to both progressive discipline and to file a grievance. As was stated in Plaintiff's Memorandum, Plaintiff's discipline was upgraded after he had lost the opportunity to utilize the CBA and grieve his termination. This was a punishment unique to himself that his similarly situated Caucasian counterparts were not subjected to as even Defendant's own management witness, Mr. Smaltz, who Plaintiff previously complained to of racism and who rejected Plaintiff's grievance form, indicated that Plaintiff was the only employee whose grievance form he had ever rejected while, at the same time, acknowledging that the CBA required management to accept grievance forms from employees no matter the circumstances. (ECF 54, page 22). This explanation reeks of pretext as Smaltz regularly accepted the grievances of Plaintiff's similarly situated Caucasian colleagues.

(ECF No. 60 at 5.) Plaintiff further asserts that "[i]t is the Defendant's disregard of its own policies and procedures regarding Plaintiff's termination which serves to aid in dismantling Defendant's argument that its termination of Plaintiff was not pretextual." (*Id.* at 4.)   In this regard, Plaintiff argues that his explanation of intentional discrimination "should be submitted to a jury as Plaintiff has shown sufficient evidence that his termination was racially discriminatory to survive Summary Judgment."  (*Id.*)

The court observes that the predominant theme in Plaintiff's race discrimination claim is that his representation of employees as a steward involving racial matters created an animus that led to his termination. In support of this argument, Plaintiff points to three specific instances: (1) "Defendant intentionally ignored the progressive disciplinary policy for the purpose of creating a reason to pretextually terminate his employment" (ECF No. 54 at 22); (2) Defendant failed to provide Plaintiff with notice of his termination (*Id.*); and (3) Smaltz refused to sign Plaintiff's grievance form on May 14, 2012 (*Id.*).

First, Plaintiff claims that Defendant intentionally ignored its disciplinary process to

create a reason for terminating him. The disciplinary process outlined in the CBA is as follows:

> "[T]he Employer shall not discharge nor suspend any employee without just cause but in respect to discharge or suspension shall give at least one warning notice of a complaint against such employee to the employee, in writing, and a copy of the same to the Union . . . . [W]arning notices or file write-ups beyond the nine (9) month period [are not] considered in the grievance procedure.. . . [A]ppeal from discharge, suspension or warning notice must be taken within ten (10) days by written notice and a decision reached within thirty (30) days from the date of discharge, suspension or warning notice.

(ECF No. 69-3 at 2 ¶ 1, 2, 4.) Defendant issued Plaintiff a warning letter for failing to follow proper protocol, which resulted in a missed package, on November 18, 2010. (ECF No. 59 at 8.) On January 24, 2011, Plaintiff was issued a suspension letter for another failure to adhere to protocol incident. (*Id.*) Plaintiff claimed that he was not told what procedure to follow during a snowstorm, which caused his error in coding packages. (*Id.*) Yet, there is no evidence in the record that Plaintiff filed a grievance form after receiving this first warning letter or this first suspension letter. Moreover, Plaintiff was issued a discharge letter for failure to properly code a delivery on September 1, 2011. (ECF No. 59 at 9.) Here, Plaintiff did file a grievance, but he asserts there was no further written notice or decision taken by Defendant within thirty days. (ECF No. 59 at 10.) Plaintiff simultaneously contends that he did not receive notice of aforementioned September 2011 infraction from Defendant via certified mail; instead, Defendant told him that his employment was terminated on May 7, 2012. After learning of his discharge, Plaintiff alleges that Smaltz refused to sign the grievance form on May 14, 2012, and this action, in and of itself, is evidence of pretext because the CBA requires managers to accept grievances. (ECF No. 54 at 22.)

It is the above-mentioned conduct by Defendant that Plaintiff asserts establishes pretext. Upon review, the court finds that Plaintiff has offered no evidence to show that the Defendant's deviation from CBA policies was because of his race. In fact, Plaintiff admits that he missed the

9

pickup on April 11, 2012 (ECF No. 59 at 12) and admits the suspension letter he received in January 2011 regarding the coding error during the snowstorm is correct. (ECF No. 49-1 at 17:12-16.) These admissions lend themselves as proof of disciplinary intent by the Defendant instead of race-motivations. Moreover, Plaintiff testified that he acted as a union steward for approximately ten (10) to fifteen (15) years. (ECF No. 49-1 at 7:13-15.) Again, the fact that Plaintiff held this position for an extended period of time with no issues, suggests that his termination was not motivated by his stewardship position. The court finds it unconvincing that Plaintiff's many years acting as union steward finally triggered Defendant to institute disciplinary actions.

Even if Plaintiff established that the Defendant's reason for terminating him is false, there is no evidence that discrimination was the real reason. Plaintiff contends that:

> The September 2011 disciplinary action should not have been on Plaintiff's record at the time of his termination because he had successfully and timely grieved the September 2011 action. Had the September 2011 action been removed from Plaintiff's record as it should have been according to the CBA, Plaintiff would have had a completely clean record at the time of the April 2012 missed pickup because all other disciplinary actions were outside of the nine month window and would have rolled off of Plaintiff's record as required by the CBA.

(ECF No. 54 at 21-22.) While Plaintiff alleges that the deviation from procedure was "a punishment, unique to [Plaintiff,] that his similarly situated Caucasian counterparts were not subject to," Plaintiff offers no evidence that Smaltz rejected his grievance because of his race. In fact, Smaltz testified that he did not do so because he was unaware of Plaintiff's employment status at the time of his involvement in Plaintiff's discharge. (ECF No. 54-11 at 4:5-18, 5.)

Thus, Plaintiff's pretext argument does not establish that discrimination was the real reason for his termination. Merely claiming that there are procedural deviations, no matter how suspicious the deviations may be, is not enough evidence to support discrimination. *Addison v.*

*CMH Homes, Inc.*, 47 F. Supp. 3d 404, 421-22 (D.S.C. 2014) ("[C]ourts have generally recognized that an employer's unfair deviation from its own termination procedures or its failure to adhere to common notions of fairness in termination is not probative of discriminatory intent and cannot show pretext."). Therefore, the court agrees with the Magistrate Judge's recommendation that summary judgment regarding Plaintiff's race discrimination claim is appropriate.

In summary, this court agrees with the Magistrate Judge's finding that the "reason to be considered at this stage would be the substantive reason given for the termination." (ECF No. 59 at 28.) The court further agrees with the Magistrate Judge that Plaintiff offers no evidence to suggest that Defendant's substantive reason for terminating him was related to his race. *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) ("[T]o establish that a proffered reason for the challenged action was pretext for discrimination, the plaintiff must prove 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct.") (citation omitted). Therefore, this court finds that summary judgment is appropriate for Plaintiff's Title VII race discrimination claim.

B.   Plaintiff's Title VII Retaliation Claim

Plaintiff objects to the Report and alleges that Defendant terminated his employment in violation of Title VII because he was widely known to vocally oppose race discrimination. (ECF No. 60 at 8.)

Title VII prohibits employers from interfering with an employee's efforts to secure enforcement of Title VII's guarantees. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). Thus, employers are prohibited from taking discriminatory action towards a plaintiff who opposes an unlawful employment practice or participates in a Title VII proceeding. 42

11

U.S.C. § 2000d-3(a). A plaintiff may establish a prima facie case of retaliation by demonstrating that "(1) he engaged in a protected activity, (2) the employer acted adversely against him, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). After an employee establishes a prima facie case of retaliation, the employer retains the burden to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer can satisfy the burden of articulating a legitimate, nondiscriminatory reason for the action, then the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination. *Id.* at 804.

**1. Prima Facie Case**

Plaintiff argues that the Magistrate Judge erred in "recommending that Plaintiff has failed to meet the causation element of the prima facie case for Title VII Retaliation . . . ." (ECF No. 60 at 7.) In support of this argument, Plaintiff asserts that the Magistrate Judge only "gives weight to Defendant's version of events while completely disregarding the applicable legal requirement to construe all genuine issues of material fact in favor of Plaintiff." (*Id.*) Accordingly, the court reviews Plaintiff's objections to the Magistrate Judge's "causation" findings in the Report.[2]

The Fourth Circuit Court of Appeals has held that "very little evidence of a causal connection is required to establish a prima facie case" and the closeness in time between the protected activity and an employer's adverse employment action is sufficient to satisfy the causation element of a prima facie retaliation case. *See, e.g., Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998); *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989)

---

[2] The court observes that the Magistrate Judge found that the first (engaging in protected activity) and second (adverse employment action) elements of a retaliation claim are met. (ECF No. 59 at 36.)

(holding three-month time period between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later).

In this case, Plaintiff argues that his protected activity as steward of representing Ricky Smith, Charles Devine, Damien Roberts, and Mr. Mealing "in race-related" matters in 2012 contributed to his termination in May of 2012. (ECF Nos. 54-8 at 2 ¶ 4 & 54 at 28.) Based on the foregoing, the court is persuaded that the few months temporal proximity between Plaintiff's representation of these individuals and his termination satisfies the causation element of a prima facie case of retaliation.

### 2. Pretext

The Magistrate Judge found that even if Plaintiff established a prima facie case, summary judgment is appropriate regarding the retaliation claim because Defendant has ample evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. (ECF No. 59 at 39.) Plaintiff asserts that he has presented both direct and circumstantial evidence to prove Defendant had knowledge of his protected activity and Defendant's deviation from standard policies and procedures satisfies the pretext requirement. (ECF No. 60 at 9.)

As the Report notes, Plaintiff must "'establish that the employer's reason was false and that retaliation was the real reason for the challenged conduct[,]' or in other words, to 'show that the harm would not have occurred in the absence of – that is, but-for – the defendant's conduct.'" (ECF No. 59 at 39-40 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143).)

The Magistrate Judge found that "Plaintiff's pretext argument is essentially a rehash of his pretext argument discussed above in connection with his discrimination claim." (ECF No. 59

at 40.) Plaintiff objects and alleges that Defendant's deviation from certain policies and procedures is "strongly indicative that Defendant's proffered reasons for terminating Plaintiff's employment is but a pretext for unlawful retaliation." (ECF No. 60 at 9.) However, as the court notes above, Plaintiff represented employees of different races over his fifteen years as a union steward. Moreover, Plaintiff undermines his position with testimony that both African-American and White package car drivers missed pick-ups and did not receive discharge notices.[3] (ECF No. 49-1 at 37:189:19–40:200:22.) Thus, Plaintiff's claim that "[b]ut for Plaintiff's race and his consistent complaints of racial discrimination at the Aiken Center, Defendant would not have disciplined Plaintiff and ultimately terminated his employment" (ECF No. 54 at 31) is insufficient to establish a claim of retaliation.

The court is further not convinced that Plaintiff's allegation of a deviation from business practices demonstrates the falsity of Defendant's legitimate, nondiscriminatory reason for terminating his employment. In this regard, Plaintiff offers no substantive evidence that the dubious disciplinary procedures of Defendant was purposefully done to terminate him. Even so, this court is not in a position to review the administrative practices of the Defendant. *See DeJarnette v. Corning Inc.,* 133 F.3d 293, 298–99 (4th Cir. 1998) ("While reviewing the employer's articulated reasons for discharge and the plaintiff's refutation thereof, we must keep in mind that 'Title VII is not a vehicle for substituting the judgment of a court for that of the employer.' Particularly, this court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions.'") (internal citations omitted). Therefore, the court agrees with the Magistrate Judge's recommendation that summary judgment is appropriate as to

---

[3] In supporting his contention that he was fired because of his race, Plaintiff identified the following package car drivers who were "untouched" even though they committed the same offense as Plaintiff: Tim Babb (White), Doug Cowart (White), Kevin McClellan (White), Carlos Ray (Black), Jason Steel (White), Damian Robinson (Black), Ricky Smith (Black), and Wyman Brown (Black).

Plaintiff's retaliation claim. (ECF No. 59 at 40.)

## V. CONCLUSION

For the aforementioned reasons, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 59) and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 49) with prejudice.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 30, 2016
Columbia, South Carolina